**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | |
| ARTHUR LUIS GALLEGOS, | § § § | No. SA-17-CR-391-XR<br>No. SA-94-CR-029-XR |
| *Defendant.* | § § § § | |

**ORDER**

On this day came on to be heard Defendant's motions to suppress (docket nos. 101,461). The Defendant, Arthur Luis Gallegos, and 34 other individuals are charged in count one of an indictment with conspiracy to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion in violation of 18 U.S.C. § 1951. The indictment alleges that the defendant and other members of the Texas Mexican Mafia (TMM) would require non-members who distribute narcotics to pay a ten-percent "tax" on the proceeds of any drug distribution. The indictment alleges that failure to pay the "tax" or "dime" resulted in serious bodily injury, robbery, or death. In a superseding indictment the Defendant has also been charged in count ten with being a felon in possession of various firearms. In 94-cr-29, the Government has filed a motion to revoke Defendant's supervised release alleging he committed new crimes in violation of the terms of his supervised release.

**Defendant's motion to suppress**

The Defendant argues that the affidavit in support of the search warrant contains misrepresentations, fails to state facts that support probable cause for the search of Defendant's apartment, is essentially a "bare bones affidavit," and that in conducting the search the law enforcement officers performed a "no knock" search when the warrant failed to specifically allow for such an intrusion.

**Background**

On May 18, 2017, FBI Special Agent Katherine Gutierrez signed an affidavit in support of search warrant. Based upon an ongoing investigation, SA Gutierrez stated that she believed there was probable cause that the Defendant and various other individuals were engaged in a drug conspiracy, unlawfully using communication facilities, and using firearms in furtherance of drug trafficking crimes, and violating several other laws.

Regarding Defendant and his residence, the affidavit stated that the Defendant had previously been convicted of a felony (carjacking), the apartment was believed to be the residence of the Defendant, that Defendant was believed to be the TMM Northside's Sergeant, that on March 26, 2017, agents surveilled a meeting between a confidential informant and Gallegos, and the informant paid a $200 "dime" payment to Gallegos and another TMM member Jose Luis Cortez. The affidavit further stated that on April 23, 2017, agents surveilled another instance of a dime payment being made and the TMM Northside Lieutenant Ricky Escobedo was followed from the original location to Defendant Gallegos' apartment complex, where the two met in the parking lot.

Further, the affidavit stated that on May 7, 2017, a confidential informant called Gallegos, and that they discussed "checking out a house," and that Gallegos wanted to be well-armed depending on how many "of them there are."

Otherwise, the forty-three page affidavit detailed allegations that all thirteen residences to be searched were residences of active TMM members who were allegedly involved in extortion and drug trafficking activities. The affidavit detailed that the TMM organization often engaged in violent activity, and that there was a high risk of danger to law enforcement officers who announce their presence before making entry.

The Magistrate Judge signed the search and seizure warrant authorizing the search of Defendant's apartment (as well as the other residences) on May 18, 2017. The warrant authorized the search and seizure of any drug ledgers, currency, computers and cell phones, records relating to the TMM, controlled substances, firearms, and indicia of participation in home invasions/robberies, such as ski masks, body armor, and stolen property.

Prior to the execution of the warrant, SA Gutierrez organized law enforcement officers into teams, and assigned each team to a residence. SA Martin and others were assigned to execute the warrant at Defendant's apartment. SA Martin testified that prior to executing the warrant he had read the affidavit and warrant. They made a no knock entry into the apartment, and located Gallegos. Various weapons, currency, suspected drug ledgers, cell phones and a tablet computer were seized.

**Analysis**

During the hearing held on August 30, 2017, SA Gutierrez testified and the Court finds that although there were minor mistakes in the affidavit, there were no material

3

misrepresentations, much less false statements that were made intentionally or with reckless disregard for the truth. See *United States v. Ortega*, 854 F.3d 818, 825 (5th Cir. 2017). The motion to suppress is denied on this ground.

"'Bare bones' affidavits typically 'contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause.' Generally, examples of 'bare bones' affidavits include those that merely state that the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises." *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006). The affidavit at issue here was not a "bare bones" affidavit and there was probable cause for a warrant to be issued for the search of Defendant's apartment. The affidavit presented evidence that Defendant was believed to be a TMM Sergeant, and a confidential informant stated that Defendant received a "dime" payment. On another occasion the confidential informant saw a TMM Lieutenant receive a dime payment and immediately thereafter met Defendant at the parking lot of his apartment complex. In considering the "totality of the circumstances" there existed probable cause to search the Defendant's apartment and to conclude that seizable property associated with the TMM drug and extortion activities would be found at the Defendant's apartment.

Alternatively, the Court concludes that if probable cause was lacking for the search of the Defendant's apartment, the good-faith exception applies to the exclusionary rule. *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (citing *United States v. Leon*, 468 U.S. 897 (1984)).

If an officer obtained evidence "in objectively reasonable good-faith reliance upon a search warrant," the evidence is admissible "even though the affidavit on which the warrant was

based was insufficient to establish probable cause." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). In conducting the good-faith inquiry, courts may examine "all of the circumstances" surrounding the issuance of the warrant. *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994).

Four circumstances exist in which the good-faith exception does not apply to the exclusionary rule: (1) when the issuing judge issues a warrant in reliance on a deliberately false affidavit; (2) when the issuing judge abandons her judicial role and fails to perform in a neutral and detached fashion; (3) when the warrant is based on an affidavit so lacking in indicia of probable cause as to render an officer's belief in it unreasonable; and (4) when the warrant is so facially deficient that it fails to particularize the place to be searched or the items to be seized. *Leon*, 468 U.S. at 923. In this case, none of the four circumstances to the good-faith exception exists. The issuing judge was not misled nor abandoned her judicial role. The warrant was not so devoid of probable cause, lacking in particularity, nor lacking judicial authority to say that a reasonably well trained officer would have known that the searches were illegal.

The Court also concludes that the officers' no knock entry into the apartment did not violate the Fourth Amendment because the officers were not required to knock and announce under the circumstances. *See Richards v. Wisconsin*, 520 U.S. 385 (1997).

Officers seeking to execute a search warrant "must knock and announce their identity and purpose before attempting forcible entry of a dwelling." *United States v. Rodriguez*, 548 F. App'x 230, 233 (5th Cir. 2013) (citing *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995)). To justify a "no knock" entry, "the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would

inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards*, 520 U.S. at 394. This showing "is not high," *Id.*, and officers are not required to demonstrate "particularized knowledge" to justify a "no knock" entry. *Linbrugger v. Abercia*, 363 F.3d 537, 542 (5th Cir. 2004).

In this case, the forty-three page affidavit included detailed allegations that the residences belonged to TMM organization members, an organization often engaged in violent activity, and that there was a high risk of danger to law enforcement officers who might knock and announce prior to making entry. The detailed allegations were sufficient to give the officers reasonable suspicion that knocking and announcing their presence, prior to entering the residence, would be dangerous given the organization's violent activity and high risk of danger to officers. *See, e.g.*, *Rodriguez*, 548 F. App'x at 234 (finding that officers had reasonable suspicion to believe knocking and announcing would be dangerous after confirming defendant had a firearm and was previously arrested for possession); *Mason v. Lowndes Cty. Sheriff's Dep't.*, 106 F. App'x 203, 208 (5th Cir. 2004) (finding the fact that "people associated with drugs often carry weapons should be considered when deciding the reasonableness of a no-knock entry"). Under the circumstances, the officers were not required to knock and announce prior to entering the apartment to execute the warrant.

**Conclusion**

For the reasons stated above, Defendant's motions to suppress are denied.

SIGNED this 5th day of September, 2017.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE